# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THOMAS JOE CATRON**                      **CIVIL ACTION**

**VERSUS**                                    **NO. 14-441-BAJ-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

       Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

       Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the findings of fact and conclusions of law recommended by the Magistrate Judge. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on August 14, 2015.

                                           **RICHARD L. BOURGEOIS, JR.**
                                           **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS JOE CATRON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-441-BAJ-RLB** |
| **CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>THE SOCIAL SECURITY<br>ADMINISTRATION** | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Thomas Joe Catron (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act" and supplemental security income. (Tr. 83-90). For the reasons given below, the Court recommends that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

**I.     PROCEDURAL HISTORY**

On January 3, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. (Tr. 83-90). Plaintiff alleged that he became disabled as of July 1, 2010 because of back and neck problems. (Tr. 39). The claim was initially denied (Tr. 38) and Plaintiff filed a timely request for a hearing, which was held on January 9, 2012. (Tr. 251-66). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 253-63). Wendy Klamm, a Vocational Expert (VE), also provided testimony (Tr. 263-65).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on March 16, 2012. (Tr. 29-37). Plaintiff's request for review was denied by the Appeals Council on January 11, 2013 (Tr. 13-16) and his request to reopen his application was likewise denied by the Appeals Council on May 16, 2014. (Tr. 4-8). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's requests. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e))). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the

evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant

is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ issued an unfavorable decision based on the evidence contained in the administrative record. Specifically, the ALJ found:

1. Plaintiff met the insured status requirements of the Act through September 30, 2010.

2. Plaintiff had not engaged in substantial gainful activity since July 1, 2010.

3. Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD) and lumbar degenerative disc disease.

4. Plaintiff did not have an impairment or combination of impairments that met a Listing, specifically Listings 1.04 and 3.02.

5. Plaintiff retained the residual functional capacity (RFC) to perform less than the full range of sedentary work. Although he could perform the exertional requirements of sedentary work, he was limited to working in environments "free of temperature extremes of cold and heat, humidity, dusts, fumes, gasses, or other pulmonary irritants."

6. Plaintiff was unable to perform any past relevant work.

7. Plaintiff was a younger individual (age 42) at the relevant time.

8. Plaintiff had a limited education and was able to communicate in English.

9. The transferability of job skills was immaterial to the ultimate determination.

10. Considering Plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that he was capable of performing — Sorter (DOT No. 209.687-022), Microfilm Worker (DOT No. 249.587-018), and Ticket Checker (DOT No. 219.587-010).

11. Plaintiff was not disabled between July 1, 2010 and March 16, 2012.

(Tr. 31-37).

## IV. DISCUSSION

Plaintiff raises two arguments in support of his appeal, both of which concern the opinion of treating physician, Dr. Jacques Saunders, provided in separate letters dated January 5, 2012 and December 12, 2012. (R. Doc. 9 at 9-13, 17); (Tr. 167-68, 250).

### A. Appeals Council Did Not Err in its Treatment of New Evidence

Plaintiff's first assignment of error is that the Appeals Council erred by ignoring additional evidence submitted by Plaintiff on appeal. (R. Doc. 9 at 9). According to Plaintiff, a letter from Dr. Jacques Saunders dated December of 2012 "was discovered" after Plaintiff submitted his May 14, 2012 request for review (Tr. 24) of the ALJ's decision. (R. Doc. 9 at 9). On January 3 and 7, 2013, Plaintiff submitted the December 2012 Letter to the Appeals Council, along with a legal brief in which his attorney reprinted the December 2012 Letter in its entirety. (Tr. 167). The Appeals Council denied Plaintiff's request for review on January 11, 2013, without mentioning the January 7, 2013 brief or the December 2012 Letter. (Tr. 13-16). Plaintiff then requested reopening of the Appeals Council's January 11, 2013 denial based on its failure to mention the January 7, 2013 brief or the referenced letter. (Tr. 12). On March 16, 2014, the Appeals Council "set[] aside" its "earlier action to consider new evidence," but again denied Plaintiff's request to reopen his application and review the ALJ's decision. (Tr. 1-8). Plaintiff now suggests that remand is warranted because the December 2012 Letter "does not appear in

the official transcript" and the record is therefore incomplete. Additionally, the Appeals Council has "not acknowledged receipt of the evidence and it does not appear that it has been considered." (R. Doc. 9 at 9). Having reviewed the entire Administrative Record, the Court finds Plaintiff's argument deficient.

After filing his initial request for review, the Appeals Council sent Plaintiff a letter on June 12, 2012 advising Plaintiff that any additional evidence or information must be submitted within 25 days. (Tr. 22-23). The letter additionally instructed Plaintiff that if the Appeals Council did not "hear from [him] within 25 days" it would "proceed with [its] action based on the record [it had]." (Tr. 23). On July 10, 2012, Plaintiff requested an additional 30 days in which to submit new evidence and information. (Tr. 21). The Appeals Council granted Plaintiff's request on July 13, 2012. (Tr. 19-20). Plaintiff was again instructed to send any new information within 30 days and advised that a failure to do so would result in the Appeals Council proceeding with their review on the record as it currently existed. (Tr. 19-20). On the August 13, 2012 deadline for submitting new information, Plaintiff failed to provide any additional information to the Appeals Council, but instead requested "an additional 30 days." (Tr. 18). In a letter dated August 20, 2012, the Appeals Council denied Plaintiff's "request for more time" and advised him that: "We will proceed with our action on the record we have." (Tr. 17). Nonetheless, Plaintiff still submitted Dr. Saunders' December 2012 Letter and a legal brief to the Appeals Council in early January of 2013. (Tr. 12).

The Appeals Council provided Plaintiff with multiple extensions of time in which to provide additional evidence. It then clearly informed Plaintiff that the window for providing that evidence had closed on August 20, 2012 and that the Appeals Council would be proceeding based on the existing record. (Tr. 17, 19, 22-23). Despite this, Plaintiff waited until December

12, 2012 to obtain another statement from Dr. Saunders. The Court notes that the December 12, 2012 Letter pertains to the relevant period. In other words, it could have been obtained within the timeframe provided by the Appeals Council, but was not. The record suggests that the December 12, 2012 Letter was not included in the record because the Appeals Council did not receive the evidence (sent by Plaintiff on January 3rd and 7th) before denying Plaintiff's request for review on January 11, 2013. (Tr. 13-16).

Additionally, Plaintiff is incorrect that the Appeals Council did "not acknowledge" Dr. Saunders' December 2012 Letter. After his request for review was denied on January 11, 2013, Plaintiff sought to reopen the record on January 24, 2013 based on new and material evidence not included in the record — the letter from Dr. Saunders. (Tr. 12). On May 16, 2014, the Appeals Council issued a decision explaining that it denied Plaintiff's request to reopen. In its denial, the Appeals Council explained:

> We have received a medical statement from Jacques Saunders, MD., which is dated December 13, 2012, nine months after the issuance of the decision. The medical statement references the period prior to the date of the decision however no medical evidence was submitted in support of the limitations indicated in the statement. The medical evidence of record does not support the limitations indicated in the statement. Therefore, reopening is not warranted.

(Tr. 6). The Appeals Council clearly considered this evidence, contrary to Plaintiff's contention, and explained why that evidence did not warrant the relief requested. Plaintiff is correct that the actual December 12, 2012 Letter is not included in the record. However, because the December 12, 2012 Letter was considered in connection with a request for reopening, Plaintiff "does not have the right to court review of [the Appeals Council's] denial of [his] request for reopening," including its rejection of Dr. Saunders' December 12, 2012 Letter. (Tr. 7); *see also Califano v. Sanders*, 430 U.S. 99, 107-08 (1977).

The Court additionally notes that any error in the Appeals Council's failure to include the letter in the record is harmless as Plaintiff has not demonstrated any resulting prejudice. The entire statement is reprinted in Plaintiff's January 7, 2013 brief, which is part of the record.[1] (Tr. 167-68). In his statement, Dr. Saunders opines that Plaintiff is limited to walking 30 feet at a time and should be considered completely disabled. (Tr. 167-68). First, the ultimate issue of disability is reserved for the Commissioner and Dr. Saunders' opinion that Plaintiff is disabled would not be entitled to any evidentiary weight. Second, as discussed below, Dr. Saunders' medical records do not support his opinion of Plaintiff's limitations given in either his December 12, 2012 Letter or his January 5, 2012 Letter. Dr. Saunders' opinions are inconsistent with his own treatment records as well as the remaining medical evidence obtained from other physicians. For the reasons discussed below, the Court agrees with the Appeals Council's reasons for rejecting Dr. Saunders' December 2012 Letter and finds that substantial evidence supports the ALJ's decision.

**B.   Consideration of Opinion Evidence and RFC Assessment**

Plaintiff argues that the ALJ's RFC finding is legally deficient because it is inconsistent with the January 5, 2012 Narrative Report/Letter of Dr. Jacques Saunders, which was submitted after the hearing and not discussed by the ALJ. (R. Doc. 9 at 9-12); (Tr. 249-50).

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).

---

[1] Plaintiff has also submitted a copy of Dr. Saunders' December 12, 2012 Letter to the Court as an exhibit attached to his brief. (R. Doc. 9 at 18). The Court notes that as an appellate body, it is restrained by the record before the Commissioner and may not consider outside evidence submitted by Plaintiff. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Even still, the Court has verified that Plaintiff accurately reprinted the December 12, 2012 Letter in his January 7, 2013 brief to the Appeals Council, which is part of the administrative record. (Tr. 167-68).

"Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453. However, the ALJ is not required to consider each of the six factors set out in *Newton* when "there is competing first-hand medical evidence . . . ." *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). When the record contains medical evidence from multiple treating sources, the ALJ is "not required to go through all six steps in *Newton*" because "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534).

The Court agrees with Plaintiff that the ALJ did not perform the "detailed analysis" of section 404.1527(d)(2) criteria contemplated by *Newton* or assign any specific weight to Dr. Saunders' opinion in his January 2012 Letter. The Court, however, does not agree that the ALJ's omission constitutes reversible error.

First, the record contains "competing first-hand medical evidence" from multiple other treating and examining physicians, including Dr. Stephen Wilson (Tr. 213-14), Dr. Alpesh Patel (183-204), and doctors at LSU's Lallie Kemp Medical Center (Tr. 218-28, 237-45) and St. Elizabeth's Hospital. (Tr. 170-74, 179-81, 206-212). *Walker*, 158 F. App'x at 535. In this case, *Newton* does not apply and the ALJ was not required to analyze the § 404.1527 factors.

Second, any error in the ALJ's failure to assign a particular weight to Dr. Saunders' opinion was harmless because Plaintiff cannot show that it affected his substantial rights. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative

proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected."). A medical source statement from a treating physician must be based on the physician's personal knowledge and medical findings resulting from his or her treatment of the claimant. *See* SSR 96-5P, 1996 WL 374183, at *4 (July 2, 1996). Dr. Saunders' narrative report is not based on objective findings of Plaintiff's conditions or is otherwise inconsistent with the record during the relevant time.

First, Dr. Saunders suggests Plaintiff suffered from severe limitations that are not corroborated by his own treatment records. In his letter, Dr. Saunders advises that Plaintiff has been diagnosed with "failed back syndrome," "wears a back brace" and has a "history of failed epidural steroid injections . . . . He walks with an antalgic gait and falls with stair climbing." (Tr. 250). According to Dr. Saunders, Plaintiff suffers from "degenerative disc disease of the cervical spine" and he has "observed decreased range of motion of [Plaintiff's] neck." (Tr. 250). Dr. Saunders explained that he "would advise leg elevations in a foot above heart angle to reduce pressure on the spine and alleviate in some degree patient's level of pain." (Tr. 250). Due to his symptoms, Dr. Saunders opined that Plaintiff's:

> [W]ork activity should be very light with allowance for periods where he may have to remove himself from the workplace in order to cope with pain and fatigue. He is going to be significantly limited in lifting and must be allowed the liberty to sit or stand as needed. I think he should avoid stooping completely because back flexion is going to be greatly problematic.

(Tr. 250).

According to the medical evidence, Dr. Saunders treated Plaintiff during the relevant period predominately for neck and back pain.[2] (Tr. 234-35, 247). Dr. Saunders' treatment

---

[2] Dr. Saunders practices with St. Elizabeth's Hospital. (Tr. 234-35, 247). The treatment records from St. Elizabeth's Hospital do not always clearly indicate the name of the doctor providing treatment. (Tr. 170-74, 179-81, 206-212, 234-35, 247). Certain records do indicate that Plaintiff was treated by several doctors at St. Elizabeth's — Dr. Thomas Perkins (171, 173-74, 180, 209, 211), Dr. Brad Vincent (Tr. 171-72, 207), Dr. James Fletcher (Tr. 180,

records show that he did not regularly observe Plaintiff walking with an antalgic gait or decreased range of motion in Plaintiff's neck — the limitations upon which his January 2012 Letter is predominately based. In fact, Dr. Saunders only reported each of these limitations on a single occasion. (Tr. 247) (decreased range of motion in Plaintiff's neck on November 10, 2011); (Tr. 235) (antalgic gait on April 19, 2011).

    Dr. Saunders's exam notes show that Plaintiff predominately sought treatment for medication refills. (Tr. 234) (July 14, 2011 – "Pt to clinic for refill on meds"); (Tr. 235) (April 19, 2011 – "Pt to clinic refill Rx"); (Tr. 247) (November 10, 2011 – "Pt to clinic for refill on meds"). On July 14, 2011, Plaintiff reported neck pain after he allegedly "fell down steps." (Tr. 234). However, Dr. Saunders noted that Plaintiff "[checked] out fine" on examination. (Tr. 234). Plaintiff also explained that his medications were helping with his sleep and that he was using his inhaler for respiratory issues and "doing well." (Tr. 234). Dr. Saunders additionally found full range of motion in all of Plaintiff's extremities on July 14, 2011. (Tr. 234). On April 19, 2011, Dr. Saunders recorded Plaintiff's subjective "chief complaint/history of present illness" as discs in back are bad." (Tr. 247). On examination, Dr. Saunders indicated that Plaintiff's Romberg Test was negative and there are no physical abnormalities noted. (Tr. 235). On March 4, 2010, Dr. Saunders examined Plaintiff for the first time at St. Elizabeth's hospital. (Tr. 181, 250, 262). Plaintiff subjectively reported a history of worsening neck and back pain. (Tr. 181). Dr. Saunders' exam notes do not record any objective findings regarding Plaintiff's lumbar spine or otherwise indicate that he even examined Plaintiff's lower back. (Tr. 181). Nonetheless, based

---

212), Dr. Sang-Ting Tsai (Tr. 206-07), and Dr. B. Brach (Tr. 210). In his brief, Plaintiff only attributes three treatment records to Dr. Saunders, as does the administrative record. (R. Doc. 9 at 7) (attributing treatment records from April 19, 2011, July 14, 2011 and November 10, 2011 (Tr. 234, 235, 247) to Dr. Saunders); (Tr. 3, 232-33, 246) (attributing records found at Tr. 234, 235 and 247 to Dr. Saunders).

on Plaintiff's subjective complaints, Dr. Saunders diagnosed lower back pain and degenerative disc disease.

Other than the objective findings mentioned above, Dr. Saunders' treatment notes do not show that he performed regular testing of Plaintiff's strength, motor function or range of motion in his spine or extremities. There are also no reports of atrophy or weakness. Dr. Saunders likewise never prescribed a back brace or otherwise suggested that Plaintiff wear one. Actually, it appears that none of Plaintiff's doctors instructed him to use a back brace. Similarly, Dr. Saunders did not advise Plaintiff to elevate his leg, limit his amount of walking, avoid heavy lifting or change positions throughout the day. (Tr. 234-35, 247). In reality, Dr. Saunders did not place any restrictions on Plaintiff's physical activities. Instead, the only health advisement that appears anywhere in Dr. Saunders' treatment records is that Plaintiff stop smoking. (Tr. 235, 247). Nonetheless, Dr. Saunders' January 2012 Letter suggests that Plaintiff is significantly limited in his ability to lift, sit, stand, walk and stoop.

For a medical source statement to be credited, it must be based on the treating physician's personal knowledge and objective findings that result from his or her treatment of the claimant. *See* SSR 96-5P, 1996 WL 374183, at *4. Dr. Saunders' letter is not based on his own findings and treatment of Plaintiff. Instead, it simply mirrors Plaintiff's subjective complaints to his doctors and the ALJ about his limitations. However, the ALJ appropriately discredited Plaintiff's testimony and allegations as inconsistent with the overall record.

At the hearing, Plaintiff explained that he suffers from lower back pain that radiates to both of his legs. (Tr. 256). The pain in his neck is "very severe," causing migraines, shoulder pain and insomnia. (Tr. 256). Plaintiff claimed that he uses a cane and back brace to walk on a daily basis. (Tr. 256). He was diagnosed with emphysema in August of 2010 and since then it

has "dramatically gotten worse." (Tr. 260). According to Plaintiff, he is constantly short of breath and fatigued — "At times I can just so much as walk to the kitchen and I'll be very exhausted" and short of breath. "I stay fatigued." (Tr. 260). Because of this, Plaintiff explained, he relies on his emergency inhaler "[a]t least a couple times [an] hour. Very short of breath." (Tr. 256). In terms of his daily activities, Plaintiff testified that he sometimes requires help dressing, as the mornings are particularly hard, and that he spends about half of each day lying down. (Tr. 257, 261). When asked how far he could walk before having to stop, Plaintiff testified: "Coming up here I had to stop twice." (Tr. 259). He proceeded to explain that he could lift "no more than a gallon of milk" and could sit for "[a]bout 15 minutes" before having to "get up and move around." (Tr. 259). Similarly, he could only stand for 15 minutes at a time. (Tr. 259). Ultimately, Plaintiff testified that he could not "get through an eight hour period of a day without having to stop and rest or lay down" because of his "emphysema, the shortness of breath and all, on top of the pain, is keeping me fatigued . . . ." (Tr. 261).

  The symptoms described by Plaintiff (and reiterated by Dr. Saunders) are belied by the record evidence, which shows some limitations but not to the extent alleged. In his most recent treatment record dated November 10, 2011, Dr. Saunders diagnosed Plaintiff's COPD as "mild." (Tr. 247). On July 14, 2011, Plaintiff told Dr. Saunders that he was using his inhalers and "doing well." (Tr. 234). Examination revealed even and unlabored respirations, clear breath sounds bilaterally and full range of motion in all extremities. (Tr. 234). On April 19, 2011, Dr. Saunders again found even and unlabored respirations, as well as clear breath sounds bilaterally. (Tr. 235). Plaintiff presented to St. Elizabeth's on February 15, 2011, complaining of vertigo, decreased hearing, bronchitis, shortness of breath and leg pain. (Tr. 170). His examination, however, did not produce any abnormal findings. (Tr. 170).

A pulmonary function study on September 7, 2011 found "mild obstructive airway disease"; Plaintiff's lung volumes did "not indicate" the presence of "restriction" but did "reveal the presence of hyperinflation"; and his "diffusion capacity [was] mildly reduced." (Tr. 239-40, 243). Emergency room records from July 13, 2011 note that Plaintiff complained of shortness of breath, neck pain and back pain. (Tr. 221). However, examination revealed full motor strength and full range of motion in all extremities; Plaintiff's neck was normal; his neurological exam was also normal; his breathing was even and unlabored and his breath sounds were clear. (Tr. 221, 224). On October 10, 2011, doctors at Lallie Kemp Medical Center reported that Plaintiff's pulmonary function study showed "mild obstructive airway disease" and that recent MRIs of Plaintiff's spine revealed "minor bulging" at C6-7, "minor degeneration" at C4-5 and C5-6, and "minimal early degenerate changes" at L4-5 and L5-S1. (Tr. 239). Considering these objective findings are qualified as "mild," "minor" or "minimal," they are clearly inconsistent with the limitations opined by Dr. Saunders on January 5, 2012. (Tr. 250).

Plaintiff was examined by consultative examiner, Dr. Stephen Wilson, on March 17, 2011. (Tr. 213-14). Dr. Wilson noted that examination of Plaintiff's neck did not reveal any swelling, inflammation or muscle spasm, but Plaintiff complained of pain on palpitation. (Tr. 213). There were no signs of muscle spasm, weakness, atrophy or decreased range of motion in the upper extremities. (Tr. 213). Plaintiff complained of pain on palpation and forward flexion across the lumbar spine. However, examination of the spine did not reveal any swelling, inflammation or muscle spasm. (Tr. 213). Orthopedic and neurological examination of Plaintiff's lower extremities did not find any muscle atrophy, muscle weakness, gross joint deformity or numbness. (Tr. 213-14). Straight leg raise was negative on both the right and left legs. (Tr. 214). Plaintiff also exhibited normal range of motion in both knees. (Tr. 214). Dr.

Wilson believed that Plaintiff's symptoms were "embellished" and that his subjective complaints of pain were not supported by any objective findings. (Tr. 213-214). Dr. Wilson ultimately opined that Plaintiff was capable of medium work; however, the ALJ gave "little weight" to the "functional capacity" assessed by Dr. Wilson. (Tr. 35, 214).

On September 23, 2010, pain-management specialist Dr. Alpesh Patel reported that Plaintiff had a "transforaminal [epidural steroid injection (ESI)] under fluoroscopic guidance in June 2010 and that helped him significantly." (Tr. 183). This evidence directly contradicts statements by Dr. Saunders — who never treated Plaintiff with steroid injections — that Plaintiff has a "history" of "*failed* steroid injections." (Tr. 250) (emphasis added). Plaintiff likewise told Dr. Patel that his medications were effective. (Tr. 185). On examination, Dr. Patel reported "SLR is positive to 35-degree elevation on the right side and negative on the left side." (Tr. 183). He recommended ESI treatment for Plaintiff's right leg. (Tr. 183). Plaintiff's SLR was negative on the right, but positive on the left in May of 2010. (Tr. 192). However, Plaintiff's SLR was negative on both the right and left, on June 25, 2010. (Tr. 190-91). Dr. Patel's treatment records also report findings of normal gait, grossly intact motor function and normal sensation. (Tr. 188, 190). And although Plaintiff presented at the hearing with a cane and testified that he used it in order to walk, Dr. Patel never observed Plaintiff using a cane for ambulation, nor did he prescribe one. (Tr. 183-98). Dr. Patel also did not instruct Plaintiff to limit his physical activities in any way. (Tr. 183-98).

Dr. Brad Vincent examined Plaintiff on August 27, 2010, finding normal motor function and intact nerves; his lungs were clear to auscultation, respirations were unlabored and breath sounds were equal. (Tr. 172). Based on Plaintiff's August 25, 2010 CT scan, Dr. Vincent diagnosed extensive emphysema and "strongly counseled" Plaintiff "regarding smoking

cessation." (Tr. 172). On July 26, 2010, Plaintiff presented to St. Elizabeth's with complaints of fever, congestion, runny nose and coughing. (Tr. 179). He was diagnosed with a sinus infection and acute bronchitis. (Tr. 179). On March 4, 2010, Plaintiff was diagnosed with an upper respiratory infection. (Tr. 181).

The objective medical evidence supports a finding that Plaintiff suffers from limitations caused by his spinal and respiratory impairments. However, these limitations are not consistent with the extreme restrictions assessed by Dr. Saunders on January 5, 2012 (or December 12, 2012). Instead, they are fully consistent with the RFC's restriction to sedentary work "in an environment free of temperature extremes . . . humidity, dusts, fumes, gasses or other pulmonary irritants." (Tr. 32).

Considering the record evidence, the ALJ's failure to explain what weight, if any, he gave to Dr. Saunders' letter was harmless error, and the RFC is otherwise supported by substantial evidence.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 14, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**